**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Christopher Lemke, individually and on behalf of all others similarly situated, | 3:21-cv-00278-wmc |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| Kraft Heinz Foods Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Kraft Heinz Foods Company ("defendant") manufactures, markets and sells "pizza bagels," represented as containing real mozzarella cheese and tomato sauce under the "Bagel Bites" brand ("Product").

2.      Reasonable consumers understand "pizza" refers to a combination of mozzarella cheese, tomato sauce and wheat crust.

3.      In the context of a "pizza snack," where crust is replaced with a bagel, consumers still expect the other two elements – mozzarella cheese and tomato sauce.

4.      The front label representations include "Mini Bagels with Mozzarella Cheese and Tomato Sauce," "Made With Real Cheese," the "Real" dairy seal, "Mozzarella Cheese" in a font larger than other statements, "Kosher Dairy," "No High Fructose Corn Syrup," "No Artificial Flavors" and "7g of Protein Per Serving."



5.      Consumers are deceived by the representations because the Product does not contain "real" mozzarella cheese and tomato sauce, as these foods are understood and expected by consumers.

I.   Importance of Dairy Industry to Wisconsin

6.      Known as "America's Dairyland," dairy is a central part of Wisconsin's economy and culture.

7.      Dairy is more integral to Wisconsin than potatoes are to Idaho and oranges to Florida.

8.      Ninety-six percent of Wisconsin dairy farms are family owned, which means there is a constant connection to dairy which would not exist if this industry were dominated by multinational agribusinesses.

9.      The dairy industry contributes over $43 billion per year to the Wisconsin economy.

10.      This amount exceeds half of all agriculture activity.

11.     Over ninety percent of milk produced in Wisconsin is used for cheese production.

12.     Wisconsin produces over a quarter of all cheese in the United States each year – over 3 billion pounds.

13.     Mozzarella cheese represents one-third of all cheese produced in Wisconsin – over one billion pounds in 2017.[1]

14.     Not only does Wisconsin produce the most cheese, it also produces the highest quality cheeses.

15.     In a competition held by the American Cheese Society in 2016, Wisconsin cheeses received 86 of the 241 awards – over thirty-five percent.

II.  Defendant's Product does not Contain Mozzarella Cheese Consumers

16.     The representations are misleading because despite the front label's emphasis on mozzarella cheese and "REAL" dairy, the Product does not contain mozzarella cheese.

17.     Mozzarella cheese is made chiefly from dairy ingredients with a small amount of permitted optional ingredients. 21 C.F.R. § 133.155(a).

18.     The optional ingredients include additional milk or cream, clotting enzymes, vinegar, coloring and salt. 21 C.F.R. § 133.155(b)(1)-(3).

19.     The reason the optional ingredients are restricted is to prevent addition of lower quality ingredients in place of high-quality dairy ingredients.

20.     The absence of "REAL" "mozzarella cheese" is evident from the fine print ingredient list, which specifies that instead of mozzarella cheese, consumers receive a "Cheese Blend" that contains "part-skim mozzarella cheese" and "modified food starch."

---

[1] Wisconsin Milk Marketing Board, Wisconsin Dairy Producers, 2017 Dairy Data A Review of the Wisconsin Dairy Industry.

**INGREDIENTS: BAGEL HALVES** (ENRICHED FLOUR [WHEAT FLOUR, ENZYME, ASCORBIC ACID, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID], WATER, SALT, INVERT CANE SYRUP, YEAST, SOYBEAN OIL), CHEESE BLEND (PART-SKIM MOZZARELLA CHEESE [PART-SKIM MILK, CHEESE CULTURES, SALT, ENZYMES], MODIFIED FOOD STARCH, SKIM MILK), SAUCE (WATER, TOMATO PASTE, INVERT CANE SYRUP, MODIFIED CORN STARCH, SALT, METHYLCELLULOSE, CITRIC ACID, POTASSIUM CHLORIDE, AMMONIUM CHLORIDE, SPICE, YEAST EXTRACT, NATURAL FLAVOR, CALCIUM LACTATE), WATER, INVERT CANE SYRUP.

21.     "Cheese Blend" is a deceptive name for this ingredient, because no "blend" of cheese, especially "REAL" mozzarella cheese, contains added starch.

22.     While defendant may claim that this ingredient *contains* part-skim mozzarella cheese and that food starch is merely added, this disregards that food starch is not a part of any mozzarella cheese or any real cheese.

23.     It is misleading to add filler ingredients to "cheese" and still call the product cheese.

24.     Reasonable consumers do not expect a cheese blend with modified food starch where the front label promises "Mozzarella Cheese" and "REAL" cheese.

25.     Wisconsin consumers want real mozzarella cheese in pizza because they value (1) its soft, moist texture, (2) its milky, yet tangy taste and (3) its high protein and relatively low calories and sodium compared to other cheeses.

III. "Real" Dairy Seal is Misleading

26.     Consumers value independent, third-party seals as a shorthand way to establish whether a product has been vetted by an accredited, independent entity.

27.     Obtaining approval from an independent third-party allows companies to obtain a marketplace advantage, in order to sell more products and charge higher prices.

28.     Recognizing the value of independent certification, the Federal Trade Commission ("FTC") has warned companies against making misleading representations regarding independent certification. *See* 16 C.F.R. § 260.1.

29.     As stated in the FTC guidelines against deceptive marketing regarding "Certifications and Seals of Approval":

> It is deceptive to misrepresent, directly or by implication, that a product, package, or service has been endorsed or certified by an independent third party.

16 C.F.R. § 260.6(a) (emphasis added).

30.     Defendant's front label (left) makes prominent use of the "REAL" dairy seal (right), owned by the National Milk Producers Federation ("NMPF"), which authorizes its use to third parties.

5

Defendant's Front Label                    "REAL" Dairy Seal



31.    The REAL Seal was introduced in 1976 by the dairy industry "to combat the use of imitation cheeses on pizzas."[2]

32.    According to the website, realseal.com, "When you see the REAL® logo on a product in a store or on a menu in a restaurant, you can trust it's the real thing, and not a pale imitation."

33.    Defendant knows consumers want real mozzarella cheese which is why it emphasizes "Mozzarella Cheese," protein content, the "REAL" seal and "MADE WITH REAL CHEESE."

34.    The website for the REAL Seal details its "Vetting Process:"[3]

---

[2] NMPF, The Real Seal Story.
[3] NMPF, Who Can Use the Real Seal?

So how do we ensure that products fulfill the strict requirements detailed above? We require every brand to submit copies of packaging and a detailed ingredient label for each product they wish to certify. This allows us to properly vet the products to ensure they meet the REAL® Seal standards.



35.   The traditional "REAL" seal does not contain any qualifying text, and is what defendant uses on its front label.

36.   According to the NMPF, the original "REAL" Seal can be used where a food contains dairy ingredients that meet federal standards of identity.

37.   Where a food or dairy ingredient does not meet a standard of identity, it can use a modified version of the REAL seal, subject to evaluation by the NMPF.

38.   The four modified seals contain the word "REAL" accompanied by the qualifying statements: "Made With Milk," "American Made Butter," "American Made Cheese" and "Made With Dairy."



39.   Defendant's Product does not qualify for the traditional "REAL" seal because the "cheese blend" contains modified food starch, an extender and filler.[4]

40.   Though NMPF guidelines might have allowed defendant to use one of the four modified REAL seals, defendant misappropriated the original "REAL" seal and added the statement, "MADE WITH REAL CHEESE."



41.   The use of the standard "REAL" seal with the statement "MADE WITH REAL CHEESE" is unauthorized by the NMPF because the Product does not contain "real cheese."

42.   No reasonable Wisconsin consumer expects "real mozzarella cheese" to have modified food starch.

43.   Defendant knew the Product did not meet the "rigorous and exacting certification process" of the NMPF to use the traditional "REAL" seal.

---

[4] NMPF, Who Can Use The REAL® Seal?.

8

44.     Though the Product may have been authorized to use a modified "REAL" seal, defendant chose to misuse the "REAL" seal, adding its own misleading statement – "MADE WITH REAL CHEESE."

45.     The use of the "REAL" seal and accompanying statements misleads consumers as to the quality of the Product.

IV. Defendant's "Cheese Blend" is Less Nutritious than Mozzarella Cheese

46.     The addition of modified food starch causes the "cheese blend" to have less nutritional value than if only mozzarella cheese – made only with dairy ingredients – was used.

47.     Consumers are misled because the front label fails to disclose – as required by law – that the purported mozzarella cheese is technically considered an imitation because "it [the cheese blend] is a substitute for and resembles another food [mozzarella cheese] but is nutritionally inferior to that food." 21 C.F.R. § 101.3(e)(1).

48.     The addition of food starch and corresponding reduction of milk results in the purported cheese blend having at least two percent less of the daily recommended value ("DRV") of protein. 21 C.F.R. § 101.3(e)(4)(ii) ("Nutritional inferiority").

49.     Consumers are misled because the front label fails to identify the "mozzarella cheese" as an "imitation."

50.     The ingredient list fails to disclose that the Product does not contain mozzarella cheese.

51.     First, the ingredient list uses the misleading term – "cheese blend" – to describe a lower quality, or imitation mozzarella cheese.

52.     Second, consumers reading the ingredient list will not know the exact nutritional values of food starch compared to real milk.

9

53.    Only after purchasing and consuming the Product will consumers also realize the Product does not taste like mozzarella cheese, due to the flat "cardboard-like" taste and rubbery mouthfeel.

## V.  The Product does not Contain Tomato Sauce

54.    Consumers expect a product claiming to contain "Tomato Sauce" will contain tomatoes in a puree or paste form, and seasonings.

55.    However, the front label representation of "Tomato Sauce" is false, deceptive and misleading because this ingredient contains non-tomato extenders and thickeners.



**INGREDIENTS: BAGEL HALVES** (ENRICHED FLOUR [WHEAT FLOUR, ENZYME, ASCORBIC ACID, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID], WATER, SALT, INVERT CANE SYRUP, YEAST, SOYBEAN OIL), CHEESE BLEND (PART-SKIM MOZZARELLA CHEESE [PART-SKIM MILK, CHEESE CULTURES, SALT, ENZYMES], MODIFIED FOOD STARCH, SKIM MILK), SAUCE (WATER, TOMATO PASTE, INVERT CANE SYRUP, MODIFIED CORN STARCH, SALT, METHYLCELLULOSE, CITRIC ACID, POTASSIUM CHLORIDE, AMMONIUM CHLORIDE, SPICE, YEAST EXTRACT, NATURAL FLAVOR, CALCIUM LACTATE), WATER, INVERT CANE SYRUP.

56.     The fourth and sixth most predominant ingredients are "Modified Corn Starch" and "Methylcellulose."

57.     Cornstarch and methylcellulose are common thickening agents for sauces and are added to the Product's "tomato sauce" to give the impression the sauce contains more tomatoes than it does.

58.     The addition of cornstarch and methylcellulose changes the substance, texture and nutritional composition of the "sauce."

59.     By using cornstarch and methylcellulose, defendant can reduce the amount of tomatoes used by thirty-five percent.

60.     Cornstarch and methylcellulose are cheaper than tomato ingredients because they are produced industrially in a chemical plant instead of originating on a farm.

61.     Consumers value tomatoes in tomato sauce more than cornstarch and methylcellulose because tomatoes are rich in lycopene, an antioxidant that contributes to heart health and reduction in cancer risk.

VI. Conclusion

62.     Reasonable Wisconsin consumers expect a product claiming to contain "Mozzarella Cheese" and "Made With Real Cheese" will contain mozzarella cheese, instead of a "cheese blend" with food starch.

63.     Reasonable Wisconsin consumers expect a product claiming to contain "Tomato Sauce" will contain only tomato ingredients and seasonings instead of thickeners like cornstarch and methylcellulose.

64.     Wisconsin food labeling regulations require that a product's identity be clear and conspicuous, and not false, deceptive or misleading. Wis. Admin. Code § ATCP 90.02.

65.    Wisconsin has adopted all federal food labeling regulations. Wis. Admin. Code § ATCP 90.10(2).

66.    The Product's name and statement of identity, "Mini Bagels with Mozzarella Cheese and Tomato Sauce," is false, deceptive and misleading and not its common or usual name.

67.    The name, "Mini Bagels with Mozzarella Cheese and Tomato Sauce," is deceptive because mozzarella cheese and tomato sauce, as these terms are understood by consumers and regulations, are not present in the Product or are present in an amount less than expected. Wis. Admin. Code § ATCP 90.02(3).

68.    Reasonable consumers must and do rely on defendant to honestly describe the components and features of the Product.

69.    Defendant misrepresented the Product through affirmative statements, half-truths, and omissions.

70.    Defendant sold more of the Products and at a higher prices than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

71.    Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

72.    Plaintiff paid more for the Product based on the representations than he would have otherwise paid.

73.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $10.99 for boxes of 72 bagel halves (56 OZ), excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

74.  Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

75.  Plaintiff Christopher Lemke is a citizen of Wisconsin.

76.  Defendant Kraft Heinz Foods Company is a Pennsylvania agricultural cooperative limited liability company with a principal place of business in Pittsburgh, Allegheny County, Pennsylvania.

77.  Diversity exists because plaintiff Christopher Lemke and defendant are citizens of different states.

78.  Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

79.  Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here, such as the marketing and sale of the Product.

Parties

80.  Plaintiff Christopher Lemke is a citizen of Brookfield, Waukesha County, Wisconsin.

81.  Defendant Kraft Heinz Foods Company is a Pennsylvania limited liability company with a principal place of business in Pittsburgh, Pennsylvania, Allegheny County. and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

82.  Defendant is the corporate successor to the Kraft Corporation.

83.  Defendant's predecessor – the Kraft Corporation – was started in 1903 through the

sale of cheese door-to-door in Chicago.

84.   Within twenty years, Kraft had become the largest manufacturer of cheese in the world.

85.   Throughout its history, Kraft has expanded and contracted.

86.   In 2015, Kraft merged with Heinz to create one of the largest food companies in the world.

87.   While defendant sells various types of foods, it still sells dairy products and foods which contain dairy ingredients.

88.   Plaintiff Christopher Lemke purchased the Bagel Bites Mini Bagels With Mozzarella Cheese and Tomato Sauce on multiple occasions within the statutes of limitations for each cause of action, including the summer of 2020, at locations including Woodman's Market, 1600 E Main St, Waukesha, WI 53186.

89.   Plaintiff bought the Product because she wanted a food which contained mozzarella cheese and tomato sauce and would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

90.   The Product was worth less than what Plaintiff and consumers paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

91.   Plaintiff intends to, seek to, and will purchase the Product again when he can do so with the assurance that Product's representations about its components and ingredients are consistent with its representations.

## Class Allegations

92.    The class will consist of all purchasers of the Product who reside in Wisconsin, Arkansas, and Ohio during the applicable statutes of limitations.

93.    Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

94.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

95.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

96.    Plaintiff is an adequate representative because his interests do not conflict with other members.

97.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

98.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

99.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

100.  Plaintiff seeks class-wide injunctive relief because the practices continue.

### Wisconsin Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18

### (Consumer Protection Statute)

101.  Plaintiff incorporates by reference all preceding paragraphs.

102.  Plaintiff and class members desired to purchase a product which contained mozzarella cheese and tomato sauce.

103.   Wis. Stat. § 100.18 provides a private cause of action for pecuniary loss resulting from an advertisement to the public that contains an "assertion, representation or statement of fact which is untrue, deceptive or misleading."

104.   The representations on the Product constitute an advertisement to the public.

105.   Wis. Stat. § 100.20 prohibits "unfair trade practices" that violate orders from the Wisconsin Department of Agriculture, Trade, and Consumer Protection ("DATCP").

106.   Violations of ch. ATCP 90 may be pursued by private parties:

Any person suffering pecuniary loss because of a violation by any other person of any order issued under this section may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee.

Wis. Stat. § 100.20(5).

107.   Plaintiff suffered a pecuniary loss due to defendant's violation of Wis. Admin. Code §§ ATCP 90.02 and 90.10.

108.   Defendant violates § ATCP 90.02(1) because the Product's declaration of "Mini Bagels With Mozzarella Cheese and Tomato Sauce" is not its common or usual name.

109.   Defendant violates Wis. Admin. Code § ATCP 90.02(3) because the declaration of "Mozzarella Cheese and Tomato Sauce" is false, deceptive and misleading because the Product does not contain these ingredients as they are understood and expected by consumers and regulations.

110.   Mozzarella cheese and tomato sauce are not present in the Product in substantial or significantly effective amounts.

111.   The relevant regulations for mozzarella cheese do not include food starch, because this is a filler ingredient, which allows a manufacturer to use up to twenty-five percent less milk.

112.   Wisconsin regulations – like federal regulations – require that a cheese which

16

purports to be mozzarella cheese but contains added food starch – be prominently labeled as "imitation mozzarella cheese," since it contains at least two percent less protein due to the replacement of milk with starch.

113. Plaintiffs and class members desired to purchase products with the attributes highlighted by the labeling and marketing – mozzarella cheese, "real cheese," and tomato sauce.

114. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

115. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

116. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

117. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it possessed nutritional, organoleptic, sensory and qualitative attributes which it did not.

118. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

119. This duty is based on Defendant's outsized role in the market for this type of Product – the nation's historic leader in dairy production.

120. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

121. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices over the past several

years.

122.   Defendant should have been aware of misleading claims with respect to imitation cheese labeling because its corporate predecessor has been penalized by the FTC for falsely advertising the nutritional content of its "Singles" slices. *Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992).

123.   Defendant is aware that consumers (1) value the nutritional content of cheese, (2) believe "REAL" cheese means the main ingredients will be milk and (3) expect tomato sauce to be thickened with more tomatoes.

124.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

125.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

126.   Defendant had a duty to truthfully represent the Product, which it breached.

127.   This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type – the leading dairy company in the nation.

128.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

129.   Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

130.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

131.   Defendant misrepresented and/or omitted the attributes and qualities of the Product.

132.   Defendant's fraudulent intent is evinced by its failure to accurately disclose these issues when it knew not doing so would mislead consumers.

<u>Unjust Enrichment</u>

133.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.   Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.   Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.   Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.   Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.   Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.   Other and further relief as the Court deems just and proper.

Dated:   June 17, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com